Melvyn E. STEIN,
Plaintiff-Appellant/Cross-Appellee,

v.

DEPARTMENT OF JUSTICE AND FEDERAL BUREAU OF INVESTIGATION,
Defendants-Appellees/Cross-Appellants.

Nos. 79–1615, 79–2185, 80–2387.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1981.

Decided Oct. 19, 1981.

As Modified on Denial of Rehearing and Rehearing En Banc Nov. 17, 1981.

Rodolphe J. A. De Seife, Howard Univ. School of Law, Washington, D. C., for plaintiff-appellant/cross-appellee.

Alfred R. Mollin, Dept. of Justice, Washington, D. C., for defendants-appellees/cross-appellants.

Before FAIRCHILD, Senior Circuit Judge, PELL, Circuit Judge, CRABB,* District Judge.

CRABB, District Judge.

These cases involve appeals from various orders of the district court requiring disclo-

* District Judge Barbara B. Crabb of the Western District of Wisconsin is sitting by designation.

sure of some government documents and allowing others to be withheld, all pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (1976). The tangled history of these cases makes it necessary to outline the prior proceedings in some detail.

## I. PROCEDURAL HISTORY

In October of 1975, plaintiff-appellant Melvyn Stein made a request under the Freedom of Information Act and the Privacy Act, 5 U.S.C. § 552 *et seq.* (1976), to the Federal Bureau of Investigation (FBI) for all documents in its possession pertaining to him.[1]

On January 7, 1977, the FBI released 39 pages of documents to Stein, stating that other documents had been withheld in whole or in part pursuant to exemptions in the FOIA and the Privacy Act. One of the released documents indicated that the FBI had released to Polish intelligence authorities information concerning Stein, who, as a lawyer, represents Polish clients. Appellant filed an administrative appeal from the agency's decision to withhold documents. The agency did not respond within the required twenty-day period, 5 U.S.C. § 552(a)(6)(A)(ii), and appellant filed suit in the district court on March 22, 1977.

On May 17, 1977, the FBI released eleven additional documents to Stein. On June 20, 1977, the FBI submitted to the trial court an affidavit in which the director of the Office of Privacy and Information Appeals stated that a substantial backlog of appeals existed and that the appeals were being processed roughly in chronological order. On August 2, 1977, apparently after resolution of Stein's administrative appeal, the FBI released another eleven documents to appellant.

On September 23, 1977, the FBI submitted to the district court an index of the withheld documents, as well as two public affidavits in support of the agency's decision to withhold the documents. The parties then filed cross motions for summary judgment.

On November 17, 1978, the district court granted the FBI's motion for summary judgment and denied Stein's request for disclosure of documents relating to an investigation of appellant conducted by the FBI in 1956 when appellant was seeking employment with the federal government. Appellant has not challenged that decision. The trial court found that the FBI's public affidavits did not provide an adequate basis on which to decide whether to require disclosure of a second group of documents pertaining to internal security investigations conducted by the FBI in the early 1970's, including the transmission of information regarding appellant to Polish authorities. The court ordered the FBI to submit the documents for *in camera* inspection. The FBI complied with this order, and also submitted an affidavit of an agent of the FBI for *in camera* review.

### A. Appeal No. 79–1615: Trial Court Decision of March 28, 1979

In a decision and order entered March 28, 1979, the district court granted the FBI's (appellee's) motion for summary judgment and ordered nondisclosure of all withheld documents. In its decision, the trial court agreed with the agency's assertion that thirteen entire documents and parts of two others were properly withheld pursuant to 5 U.S.C. § 552(b)(1) (hereafter sometimes referred to as (b)(1)), which exempts from disclosure matters that are:

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

From its *in camera* review of the record, the court found that the documents were properly classified pursuant to Executive Order 11,652, 3 C.F.R. 1085 (1971–75 Compilation), agreeing with the agency that:

Some of the documents would either directly or by inference reveal intelligence

---

1. Stein also sought records pertaining to him from the Immigration and Naturalization Service. Eventually the agency voluntarily re- leased the documents to Stein and INS was dismissed from the case.

sources or techniques, and release of any of the documents might prejudice "a specific foreign relations" matter. We cannot say more about the documents without revealing exempt information.

*Stein v. Dep't of Justice*, No. 77–C–954 (N.D.Ill. March 28, 1979).

The government also argued, and the trial court agreed, that four entire documents, all found to be exempt under (b)(1), and parts of six other documents were exempt under 5 U.S.C. § 552(b)(7)(C), which allows nondisclosure of:

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would...

(C) constitute an unwarranted invasion of personal privacy.

Finally, the trial court found that portions of three documents were properly withheld pursuant to 5 U.S.C. § 552(b)(7)(D) (hereafter sometimes referred to as (b)(7)), which allows the government to withhold the names of confidential sources and their confidential information if obtained during the course of either a criminal investigation or a "lawful national security intelligence investigation."

Stein appealed the order of the district court raising four issues: (1) appellees' submission of an *ex parte, in camera* affidavit, and the trial court's apparent reliance on the affidavit, violated appellant's right to due process of law; (2) the classification of the documents after appellant made his FOIA request was not proper, apparently under Executive Order 12,065, 3 C.F.R. 190 (1979) which appellant asserted should have been applied to his case;[2] (3) in turning over to Polish intelligence authorities information regarding appellant, and in refusing to provide appellant with the same information, defendants violated various constitutional rights of appellant, as well as various federal statutes; and (4) the documents involved in this lawsuit were not exempt under any of the three FOIA provisions asserted by the government.

While the appeal of this case was pending, the government asked this court to remand the case to the district court. The government based its motion primarily on the fact that newspapers in Chicago had published stories relating in some way to the documents at issue. The government indicated that it wished to reevaluate the desirability of maintaining the classified status of the documents sought by appellant Stein. This court granted the government's motion on January 11, 1980, and remanded the case "to the district court for the limited purpose of allowing the defendants-appellees to conduct a reevaluation of the classification of the documents in question, and to submit that reevaluation to the district court for further proceedings." This court ordered also that after the district court entered its order after remand, "such order shall be transmitted to this court as a supplement to record, and proceedings in this court will resume...."

*B. Appeal No. 80–2387: District Court Order of March 24, 1980*

After remand, the government reevaluated the classifications of the documents under exemption (b)(1) and Executive Order 12,065, which had become effective on December 1, 1978, superseding Executive Order 11,652 under which the original classification had been made. The reevaluation resulted in the documents being given enhanced classification, from "confidential" to "secret." *See generally* Executive Order 12,065, 3 C.F.R. 191, Sec. 1–1.

On March 7, 1980, two agents of the FBI visited the district judge and told him that they were conducting an espionage investigation. The agents sought to learn whether the judge or any member of his staff had been responsible for giving information regarding the classified documents to various news media. The agents asked the judge to undergo a polygraph examination, to which he agreed at first. He later decided not to undergo such a test.

On March 24, 1980, acting on a motion by the government to adopt the March 28, 1979

---

**2.** See section III.A, *infra.*

order allowing the withholding of the documents, the district court reversed its earlier decision and ordered that the government disclose substantially all the documents sought by appellant Stein. The court found that the withheld documents were "innocuous and ludicrous" and that no harm could come "from telling Mr. Stein what the agents were saying about him." *Stein v. Dep't of Justice*, No. 77–C–954 (N.D.Ill. Mar. 24, 1980). However, the district court ordered that "names other than Stein's may be deleted." The district court approved this limited nondisclosure pursuant to exemptions (b)(1) and (b)(7)(C) and (D).

After the district court entered its order, the government disclosed a substantial portion of the documents at issue. The government then moved the district court for reconsideration of its disclosure order. In support of its motion for reconsideration, the government submitted *in camera* to the district court copies of the documents at issue and a classified affidavit prepared by an FBI agent who attempted to justify nondisclosure of the remaining documents. The trial court refused to accept these *in camera* submissions and, on September 4, 1980, denied the government's motion for reconsideration.

The government then filed a cross-appeal of the district court decision ordering disclosure of the documents. The government maintains that the public affidavits of the FBI sustained the government's burden of showing that the documents at issue are exempt from disclosure; and that the district court erred in refusing to consider the government's second classified *in camera* affidavit. The government also argues that the issues raised in Stein's original appeal are either moot because of the order of March 24, 1980, or insubstantial to the extent that they are understood as claims against that order.

## C. Appeal No. 79–2185: District Court Orders of Sept. 11, 1979 and Sept. 4, 1980

On April 6, 1979, appellant Stein moved the district court for an award of attorney's fees. On September 11, 1979, the district court denied the motion, finding that Stein had not "substantially prevailed" because the documents released to Stein up to that time were released as a result of Stein's administrative appeals and not because of this lawsuit. Moreover, the district court found that the documents released up to that time were so fragmented "as to be either incomprehensible or useless to plaintiff," so that even if it could be said that the documents had been released because of this litigation, Stein could not be said to have "substantially prevailed."

Stein appealed that order. Before this court heard the appeal, remand had been ordered as outlined above. On March 31, 1980, after the district court ordered disclosure of a substantial portion of the documents sought by Stein, he moved again for an award of attorney's fees. The district court denied this motion on September 4, 1980. Although Stein has not filed an appeal from that order, he has asked this court to make an award of attorney's fees.

On October 6, 1980, this court consolidated these appeals for purposes of oral argument and briefing.

## D. Issues Before This Court

The government argues that Stein's original appeal was rendered moot by the district court order of March 24, 1980. It is true that in its March 24, 1980 decision, the district court ordered disclosure of a substantial portion of the documents sought by appellant, but it is also true that the district court order allowed withholding of some of the documents, and that the government continues to withhold still others. Moreover, in remanding this case after the original appeal, this court stated that the district court's order after remand would be received here as a "supplement to record." Thus, the order to remand contemplated that the original appeal would survive further action in the district court. Therefore, to the extent that appellant still seeks release of documents ordered withheld or withheld by the government pending this appeal, the issues raised in Stein's original appeal are not moot.

After the district court entered its order of March 24, 1980, the government disclosed to appellant much of the information contained in the previously withheld documents. Thus, it appears that we need consider only those issues raised by the government as they pertain to those documents, or portions of documents, still withheld, either by order of the district court, or by action of the government pending this appeal.

## II. PROCEDURES FOR JUDICIAL REVIEW OF FOIA REQUESTS

### A. In General

The FOIA was enacted with the express intent of opening up the workings of government to public scrutiny. The Act embodies a procedural scheme designed to compel executive agency personnel to respond promptly and completely to information requests. Initial requests to agencies are to be considered and determined within ten days, 5 U.S.C. § 552(a)(6)(A)(i); appeals of adverse determinations are to be determined within twenty days of receipt of the appeal. § 552(a)(6)(A)(ii). If an appeal results in an adverse ruling, the requester can file a complaint with the federal district court for the district in which he resides, or has his principal place of business, or where the agency records are located, or in the District of Columbia, and the district court is to determine the matter *de novo*. § 552(a)(4)(B).

Part (b) of the Act sets forth the permissible exemptions for the withholding of government documents from disclosure. In pertinent part, these relate to matters that are

(1) Specifically required by an Executive order to be kept secret in the interest of the national defense or foreign policy; * * * (7) Investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency....

In reviewing claims of exemptions under the Freedom of Information Act, a reviewing court.

may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

5 U.S.C. § 552(a)(4)(B) (1976).

The Conference Report accompanying the 1974 amendments to the Act explained that:

While *in camera* examination need not be automatic, in many situations it will plainly be necessary and appropriate. Before the court orders *in camera* inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. The burden remains on the Government under this law.

S.Rep.No.93–1200, 93d Cong., 2d Sess. (1974 Conference Comm. Report), U.S.Code Cong. & Admin.News, 1974, 6267, 6287, *reprinted in* Senate Committee on the Judiciary and House Committee on Government Operations, Freedom of Information Act and Amendments of 1974 (P.L. 93–502): Source Book 219, 226 (Joint Comm. Print 1975) (hereafter cited as Source Book). *See also Terkel v. Kelly*, 599 F.2d 214, 215, 217 (7th Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

In its provisions for judicial review, the Act's scheme is awkward at best. It is somewhat ironic that legislation intended to open up the workings of executive agencies incorporates a scheme of judicial review designed to be closed in large part not only to the public but to adverse parties. The consequent dilemma for judges arises from the conflict between their obligation to maintain the openness and adversarial nature of judicial proceedings and their responsibility to carry out the purpose of the FOIA by obtaining sufficient information from the government so as to perform the review function mandated under the Act, all without jeopardizing the legitimate interests of the government and third parties in the confidentiality of withheld documents.

### B. Classified Documents

■ In dealing with classified documents allegedly exempt under (b)(1), the judge's dilemma is made more acute by the potentially greater risks of disclosure. Prior to 1974, judges faced no such dilemma because review of claims of exemption under section (b)(1) was strictly limited:

> Congress . . . in § 552(b)(1) had ordained unquestioning deference to the Executive's use of the "secret" stamp . . . [T]he language of the exemption, confirmed by its legislative history, plainly withholds from disclosure matters "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy." In short, once a federal court has determined that the Executive has imposed that requirement, it may go no further under the Act.

*EPA v. Mink*, 410 U.S. 73, 94, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973) (Stewart, J., concurring). This approach was deplored by Congress; it responded to *Mink* (and to what it perceived as bureaucratic foot-dragging in the Act's implementation) with the passage of the 1974 amendments which provided for *de novo* and *in camera* review of classified documents by the courts. § 552(a)(4)(B). However, the conference committee noted that, with respect to classified documents, the conferees

> recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [effects] might occur as a result of public disclosures of a particular classified record. Accordingly, the conferees expect that federal courts, in making *de novo* determinations in section 552(b)(1) cases under the Freedom of Information law, will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.

S.Rep.No.93–1200, 93d Cong., 2d Sess. 12 (1974), U.S.Code Cong. & Admin.News 1974, 6290, *reprinted in* Source Book, at 229.

From these statements, it appears that Congress did not intend that the courts would make a true *de novo* review of classified documents, that is, a fresh determination of the legitimacy of the classification status of each classified document. Rather, Congress intended that the courts would review the sufficiency of the agency's affidavits and would require the agency to come forward with more information or with the documents themselves if the affidavits proved insufficient.

■ In practice, the review process proceeds in this manner. The agency has the burden of sustaining its claim of exemption. It can discharge that burden by the submission of affidavits that (1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith. *Military Audit Project v. Casey*, 656 F.2d 724 (1981); *Lesar v. Dep't of Justice*, 636 F.2d 472 (D.C. Cir.1980); *Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d 1381 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Terkel v. Kelly*, 599 F.2d 214. If this burden is met, then summary judgment for the government is appropriate without an *in camera* review of the documents.

■ The court has the authority to require the agency to create as full a public record as possible. This means a record which includes a description of the documents and a detailed justification of each claim of exemption from disclosure. *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The party seeking the document can then criticize and analyze the detailed description and justification, and the party may conduct appropriate discovery in order to evaluate the claims of exemption. *See Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1013 (D.C.Cir.1976).

■ If parts of documents for which exempt status is claimed may be segregated reasonably so that nonexempt portions may

be released, the court may require disclosure of those portions that do not fall within an FOIA exemption. *Terkel v. Kelly*, 599 F.2d at 217–18; *Ray v. Turner*, 587 F.2d 1187, 1197 (D.C.Cir.1978) (amended opinion).

In cases where the public record does not provide a sufficient basis for a decision, and the district court could find reasonably that public itemization and detailed justification would compromise legitimate security interests, the reviewing court may examine the records *in camera*. 5 U.S.C. § 552(a)(4)(B)(1976). In some cases, the court may find it necessary to review classified affidavits *in camera*. *Hayden v. National Security Agency/Central Security Serv.*, 608 F.2d at 1385; *Phillippi v. Central Intelligence Agency*, 546 F.2d at 1011–13.

■ It is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents *in camera*. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims. The court is limited to determining that the documents are the kinds of documents described in the government's affidavit, that they have been classified in fact, and that there is a logical nexus between the information at issue and the claimed exemption. The court is in no position to second-guess either the agency's determination of the need for classification or the agency's prediction of harm should release be permitted. Even in those instances where the court might have its own view of the soundness of the original policy decision, *see, e. g.*, the discussions in *Military Audit Project* (the Howard Hughes *Glomar Explorer* project); *Lesar*, (FBI investigation of its own surveillance of Martin Luther King, Jr.), it must defer to the agency's evaluation of the need to maintain the secrecy of the methods used to carry out such projects.

This does not mean, however, that such review does not further the purposes of the Act. Clearly, the prospect of having to justify its classification decisions before a neutral arbiter causes a more thorough and objective presubmission review by the agency than would otherwise be the case.

■ In reviewing the lower court's two decisions on release of the classified documents, we have examined the original public affidavit, the index, and justification for withholding the documents, the public affidavit of Special Agent Dean submitted after the case was remanded to the district court, and the documents. From our examination of the claims of exemption in this case, *see* Part III, *infra*, we are satisfied that when the case was first before it, in 1979, the district court made a proper review of the classification claimed by defendants. We find and conclude that the court was correct in its March 28, 1979 decision to allow withholding of the documents, but that the court applied an erroneous legal standard when it ordered release of the same documents in March 1980. We are satisfied that the public affidavit of Special Agent Dean would have justified continued withholding of the documents were it not for the peculiar factors present in this case: the newspaper articles on the subject; the visit of the FBI to the trial judge; the enhanced classification of the materials after agency reevaluation; and the government's decision to release, without requesting a stay and filing an appeal, much of the information contained in the documents ordered released by the trial court in its order of March 24, 1980. Considered separately or together, these events raise doubts about the accuracy of the statements contained in Special Agent Dean's affidavit.

Appellant Stein contends that the government's conduct in this case deprives the government's affidavits of any claim to deference. In particular, he cites the request to the district judge to submit to a lie detector test. We agree with appellant that this request raises questions about the good faith of the government. Rather than deciding on the record before us whether the government's conduct constitutes bad faith or remanding to the district court for such a determination, we have reviewed the actual documents, choosing not to rely on the adequacy of the public affidavit.

Stein argues also that the district court erred when it refused to let him conduct discovery after this court's order remanding the case. However, in light of the limited purpose for which the case was remanded, it is doubtful that there was any error in the refusal to permit discovery. In any event, because we have decided to conduct our own examination of the withheld documents, we need not decide this issue.

We have declined to review the two affidavits submitted to the district court *in camera*, concluding that such review is unnecessary to our decision and preferring to confine our review to the public record as much as possible.[3]

### C. In Camera Affidavits

█ Stein argues that his rights to due process of law were violated by the government's submission, and the district court's apparent consideration, of an *ex parte, in camera* affidavit. This affidavit was submitted on December 18, 1978, as part of the government's response to the district court's order directing submission of the documents *in camera*. It seems to be Stein's position that use of any *in camera* affidavits in a Freedom of Information Act case is either unconstitutional or a violation of the Act.[4]

Nothing in the Freedom of Information Act supports the position that *in camera* affidavits may *never* be submitted to a district court in connection with FOIA litigation. The Act provides that a district court is to make a *de novo* review of the classification claimed by the agency, even when the government claims that documents should remain secret in the interest of national security. 5 U.S.C.

§§ 552(a)(4)(A), 552(b)(1). However, as noted above, Congress indicated its concern regarding national security and classification of documents, stating that it expected the courts to give substantial weight to agency affidavits.

The Senate Committee on the Judiciary stated that "in some cases of a particularly sensitive nature [a court may] decide to entertain an *ex parte* showing by the government." S.Rep.No. 854, 93d Cong., 2d Sess. (1974), *reprinted in* Source Book, at 153, 167–68.

In certain cases involving assertions of national security, courts have approved the use of secret government explanations and have allowed the government to submit affidavits *in camera*. *See, e. g., Hayden*, 608 F.2d at 1385. In other contexts, the Supreme Court has made clear that the constitution requires at least some deference to the executive in matters of national security and foreign affairs. *See United States v. Nixon*, 418 U.S. 683, 710, 715 n.21, 94 S.Ct. 3090, 3108, 3111 n.21, 41 L.Ed.2d 1039 (1974). Moreover, district court judges would be faced with an impossible task of evaluating claims of national security if, in an FOIA case, they could *never* accept and examine *in camera* explanations of the government's reasons for withholding certain documents.

█ Although the government agency claiming an exemption for release of documents under 5 U.S.C. § 552(b)(1) may submit affidavits *in camera*, it does not follow that such submissions should be made automatically. On the contrary, as noted earlier in this opinion, such secret explanations should be used sparingly, and normally only

---

3. On appeal, the government argues, as it did in its motion for reconsideration of the March 24, 1980 order of the district court, that all of the documents were properly classified pursuant to Executive Order 12,065, and therefore exempt under 5 U.S.C. § 552(b)(1). For the documents or portions of documents still withheld, this claim of exemption can be reviewed by examining the public Dean affidavit and the documents themselves. For three of the documents, however, it appears that the sufficiency of the (b)(1) claim could be reviewed only by reference to the second, secret Dean affidavit.

Because we have declined to review the affidavits submitted *in camera* in this case, and because we find that the government originally properly claimed exemption for these three documents under another exemption, 5 U.S.C. § 552(b)(7)(C) and (D), there is no need to examine the second Dean affidavit.

4. Stein argues also that the affidavit was "in fact a brief." Whether the document is a brief or an affidavit, our analysis of this issue is the same.

after creation of as much of a public record as possible.[5] *See Phillippi v. Central Intelligence Agency,* 546 F.2d at 1013.

### III. ANALYSIS OF CLAIMS OF EXEMPTION

#### A. Exemption (b)(1)

In the first Dean affidavit submitted to the district court after remand, the government asserted that fifteen of the documents at issue were properly withheld pursuant to 5 U.S.C. § 552(b)(1), which protects against disclosure matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such an Executive order."[6]

■ Originally, the documents or portions thereof that are the subject of this appeal were classified pursuant to Executive Order 11,652, 3 C.F.R. 1085 (1971–75 Compilation). As noted earlier in this opinion, after this court's order remanding Stein's appeal, the government reclassified the documents pursuant to Executive Order 12,065, 3 C.F.R. 190 (1979). This Executive Order took effect on December 1, 1978. Because Executive Order 12,065 is the order "under which the agency made its ultimate classification determination," it now controls this litigation with respect to claims of exemption under (b)(1). *Lesar v. Dep't of Justice,* 636 F.2d 472, 480.

In order to evaluate the government's claim of exemption under (b)(1), we must determine whether the government's classification of the documents at issue on this

---

**5.** There seems to be some confusion on the part of the government regarding appellant Stein's claim that acceptance of *in camera* affidavits was unlawful. Stein's argument is directed to the affidavit submitted in December, 1978. In expounding its argument that the district court erred when it refused to accept a *second* secret affidavit, the government in its reply brief states:

> Since, as a general rule, courts have cautioned against the use of an *in camera* affidavits except when clearly necessary . . ., the government offered a classified affidavit only when it became apparent that the district court may not have understood the significance of the information. If the district court's refusal to accept the government's affidavit is sustained by this Court, it would mean that an *in camera* affidavit, if it is to be possible to offer one at all, must be offered by the government at the outset of the case. This result would be inconsistent with the Congressional intent to decide cases on the public record where it is possible.

The government in this case did submit an *in camera* affidavit early in the case, and not necessarily "when it became apparent that the district court may not have understood the significance of the information." The first *in camera* affidavit was submitted after the district court ordered submission of the documents for its inspection. It is not at all clear that at that point, such an affidavit was "clearly necessary." In any event, because we decide the classification issues in this case on the basis of a public affidavit and *in camera* examination of the documents, we need not decide whether the district court erred in refusing to accept the second classified affidavit, nor need we decide whether submission of a secret affidavit was inappropriate in this case.

**6.** The government states that portions of thirteen documents, all containing classified information, are involved in its cross-appeal. These documents are indexed and labeled: (2)(a)1; (2)(a)2; (2)(a)3; (2)(a)5; (2)(a)6; (2)(a)10; (2)(a)12; (2)(a)13; (2)(a)14; (2)(a)16; (2)(b)1; (2)(b)2; and (3)(a)1.

From the record of this case, it appears that document (2)(a)7 has been released in its entirety. Thus, it appears that Stein's appeal involved portions of the thirteen documents listed above, as well as documents indexed and labeled: (2)(a)4; (2)(a)8; (2)(a)9; (2)(a)11; and (2)(a)15.

In conducting our review of the documents *in camera,* we found that there was some confusion regarding the numbering and labeling of the documents. A few documents had no labels at all. These appeared not to relate directly to appellant. One document was mislabeled. This confusion, however, does not change the result in this case. The unlabeled documents contained information substantially similar to that in the labeled documents for which the government claims exemptions, and we find that the unlabeled documents were properly classified. We were able to match the mislabeled document with the proper description and, thus, the mislabeling problem was overcome.

Finally, we note that in his reply brief, Stein asserts his belief that the government has not delivered to plaintiff, or to the district court, all the requested documents. We can find no evidence in the record to support this assertion.

appeal was accomplished in accordance with the procedural and substantive requirements of Executive Order 12,065.

### 1. *Procedural Requirements Under Executive Order 12,065*

Executive Order 12,065 establishes various procedures that must be followed when government agencies classify documents. For example:

At the time of original classification, the following shall be shown on the face of paper copies of all classified documents:

(a) the identity of the original classification authority;

(b) the office of origin;

(c) the date or event for declassification or review; and

(d) one of the three classification designations [Top Secret, Secret, or Confidential].

Executive Order 12,065, 3 C.F.R. 190, 193, Sec. 1–501.

The first Dean affidavit establishes that he possesses Top Secret classification authority, delegated by the Attorney General of the United States. *See* Executive Order 12,065, 3 C.F.R. 192, Sec. 1–204. From the expurgated, public copies of the documents at issue, it appears that the government complied with various other procedural requirements under the Executive Order. For example, the expurgated copy of document (2)(a)1 contains markings which identify the classification authority, office of origin of the document, date of review of classification (May 4, 1980), and the designation "secret." Other markings indicate which portions of the document are classified as required by Section 1–504 of Executive Order 12,065.

Appellant Stein does not challenge most of the procedures employed by the government. However, he does raise three issues regarding what may loosely be termed procedural matters.

 First, Stein claims that Section 1–606 of Executive Order 12,065 "absolutely prohibits classification after a FOIA-Privacy Act request." This argument is based on a misreading of the order. The pertinent part of the Executive Order provides:

Documents originated before the effective date of this Order [as were all the documents at issue here] and subject to [a FOIA request] may not be classified unless such classification is consistent with this Order and is authorized by the senior official designated to oversee the agency information security program or by an official with Top Secret classification authority. Classification authority under this provision shall be exercised personally, on a document-by-document basis.

Executive Order 12,065, 3 C.F.R. 195, Sec. 1–606. Our review of the Dean affidavit and the documents leads us to find that the government complied with this section of the order, and appellant has provided us with no evidence or argument to the contrary.

 Second, Stein points out that most of the documents at issue were originated more than six years before they were classified, and that section 1–401 of Executive Order 12,065 provides that documents generally will be declassified "no more than six years" after the original classification. Thus, according to appellant, the documents that originated more than six years before classification should be made public.

We reject this argument. The actual language of section 1–401 indicates that the general six-year duration of classifications begins to run *after* the time of the original classification. The documents at issue on this appeal were not classified until early 1980. Also, section 1–402 of Executive Order 12,065 provides that:

Only officials with Top Secret classification authority and agency heads listed in Section 1–2 may classify information for more than six years from the date of the original classification.

This authority shall be used sparingly. In such cases, a declassification date or event, or a date for review, shall be set. This date or event shall be as early as national security permits and shall be no more than twenty years after original classification, except that for foreign

government information the date or event may be up to thirty years after original classification.

Executive Order 12,065, 3 C.F.R. 193, Sec. 1–502. As noted earlier, FBI agent Dean possesses Top Secret classification authority, and his classifications also set a proper date for review under Section 1–402. In its order entered November 17, 1978, the district court found that the documents at issue were created at a time when only documents to be disseminated were classified and that the agency intended not to disseminate these documents. Thus, there was no reason to classify the documents when they were originated.

 Third, Stein claims that the government classified the documents at issue here in order to conceal mistakes and improper activities, and that this purpose violated section 1–601 of the applicable Executive Order. As part of this argument, Stein claims that the government officials who generated the documents violated various of his constitutional rights, as well as various federal statutes, in conducting the investigations and other activity underlying the documents. We are not certain how those claims could be resolved in the context of this FOIA litigation. In any event, our review of the substantive criteria for classifying documents, coupled with our review of the documents themselves, leads us to conclude that the documents still withheld under exemption (b)(1) were properly classified.[7]

### 2. *Substantive Standards of Executive Order 12,065*

 Executive Order 12,065 established the following substantive standards for classification of documents:

1–3. Classification Requirements.

1–301. Information may not be considered for classification unless it concerns:

(a) military plans, weapons, or operations;

(b) foreign government information;

(c) intelligence activities, sources or methods;

(d) foreign relations or foreign activities of the United States;

(e) scientific, technological, or economic matters relating to the national security;

(f) United States Government programs for safeguarding nuclear materials or facilities; or

(g) other categories of information which are related to national security and which require protection against unauthorized disclosure as determined by the President, by a person designated by the President pursuant to Section 1–201, or by an agency head.

1–302. Even though information is determined to concern one or more of the criteria in Section 1–301, it may not be classified unless an original classification authority also determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security.

1–303. Unauthorized disclosure of foreign government information or the identity of a confidential foreign source is presumed to cause at least identifiable damage to the national security.

Executive Order 12,065, 3 C.F.R. 193 (1979).

Having examined the first Dean affidavit and the documents, we conclude that those portions of the documents still withheld were properly classified, and the government may continue to withhold them. For example, in describing document (2)(a)1, Dean states:

[The withheld] portions contain information which specifies the target, scope and the nature of a foreign counterintelligence activity. A singular identifier is shown for an intelligence source who provided information regarding this intelligence target and individual associated

---

7. Although it is not entirely clear, it appears that Stein is claiming that one of the documents at issue here was classified *after* it was released to him. It is possible that such a classification could violate Executive Order 12,-065, 3 C.F.R. 195, Sec. 1·607. But in this case, only a portion of that document was released to Stein; the classified portions were withheld.

therewith. The identity of the Special Agent of the FBI handling the intelligence source is also shown. Due to the uniqueness and specificity of the information, a more detailed description could reasonably be expected to expose the particular intelligence activity and compromise the source resulting in serious damage as explained [earlier in the affidavit.]

This explanation meets the substantive requirements of the Executive Order. Dean averred that the information concerned a foreign counterintelligence agency, information classifiable under section 1–301. Dean also averred that the revelation of a confidential source could lead to, among other things, the death of the source, "which could be expected to cause at least identifiable damage to the national security." Section 1–302. Further, revelation of "the identity of a confidential foreign intelligence source is presumed to cause at least identifiable damage to the national security," according to Section 1–303. Finally, the affidavit accurately describes the documents, or portions thereof, at issue.

■ In its order of March 24, 1980, the district court indicated that the decision to require disclosure of most of the documents rested at least in part on the fact that there had been published several newspaper articles supposedly dealing with at least some of the documents at issue. The government argues that the exempt status of classified documents should not be affected by the fact that there has been public speculation on their contents, even if the speculation may be accurate. We agree. "It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so." *Knopf v. Colby,* 509 F.2d 1362, 1370 (4th Cir.) *cert. denied,* 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482 (1975). *See also Military Audit Project v. Casey,* 656 F.2d 724 (1981). As the government argued in its reply brief, official confirmation of public speculation may lead other governments to take some action that otherwise would not be taken had there been no confirmation.

■ In holding that those portions of the documents still withheld under exemption (b)(1) were properly classified, we make no determination respecting those portions of the documents that the government chose to release to appellant subsequent to the district court's order of March 24, 1980, but before the government's motion for reconsideration of that motion. Having chosen to reveal that information to appellant before appealing the order of the district court, the government cannot ask this court to determine whether the disclosed information was properly classified. However, we must point out that the government's choice to reveal certain information in this case before appealing the order of the district court does not necessarily undercut the validity of the first Dean affidavit. There is nothing to prevent the executive from deciding to make public otherwise classifiable information. Such decisions rest with the executive branch, and it may exercise its discretion to release or withhold properly classified information. By exercising its discretion to make public some classified documents, it does not waive any right it has to withhold other properly classified documents of a similar nature.

### B. Exemption (b)(7)

The Freedom of Information Act allows the government to withhold

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information fur-

nished only by the confidential source,
. . .

5 U.S.C. § 552(b)(7)(C) and (D) (1976).

As noted earlier in this opinion, the government claims the (b)(7) exemption for three documents.[8] According to the index of the documents submitted to the court early in this litigation,[9] portions of documents numbered "(2)(a)15," "(2)(a)16" and "(2)(b)1" were withheld pursuant to exemption (b)(7)(C). Our review of these documents reveals that the withheld portions include the names and other identifying data of agents of the FBI, informants, targets of investigations, and people tangentially related to counterintelligence investigations. This information may be withheld properly under (b)(7)(C). *Lesar v. Dep't of Justice,* 636 F.2d, at 486–88; *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977); *Ferguson v. Kelly,* 455 F.Supp. 324, 327 (N.D.Ill.1978).

 Also, portions of document "(2)(b)1" were withheld to protect the identity of a confidential source involved in an intelligence operation. 5 U.S.C. § 552(b)(7)(D). Appellant Stein raises three objections to the claims of exemption from disclosure under (b)(7). First, appellant argues that the names of FBI agents should be disclosed because they are public figures. However, the fact that FBI agents are public officials does not end the inquiry under (b)(7)(C):

> In their capacity as public officials FBI agents may not have as great a claim to privacy as that afforded ordinarily to private citizens, but the agent by virtue of his official status does not forgo altogether any privacy claim in matters related to official business. . . . [T]hese agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.

*Lesar v. Dep't of Justice,* 636 F.2d at 487 (footnote omitted). *Accord, Baez v. United States Dep't of Justice,* 647 F.2d 1328, 1339 (D.C.Cir.1980).

We can see no significant public interest in disclosing the names of the agents at this point. With no real public interest at stake, the balance shifts in favor of the private interest and nondisclosure. *Baez v. United States Dep't of Justice,* 647 F.2d at 1339. *See Ferguson v. Kelly,* 455 F.Supp. at 327.

 Second, Stein argues that exemption (b)(7) applies to investigatory records compiled for law enforcement purposes, and that "a counter-intelligence program does not fit this exemption." It might be possible to construe the phrase "investigatory records compiled for law enforcement purposes" in (b)(7) in such a way as to exclude intelligence investigations. But Congress also provided that "in the case of a record compiled . . . by an agency conducting a lawful national security intelligence investigation, [the agency may withhold] confidential information furnished only by the confidential source. . . ." 5 U.S.C. § 552(b)(7)(D).

It seems clear from the language of (b)(7)(D) that Congress intended that records of intelligence investigations be included in "investigatory records compiled for law enforcement purposes," and thus, that the government need not release such records if they would "constitute an unwarranted invasion of personal privacy" or "disclose the identity of a confidential source." The legislative history of the section supports this view:

> The . . . term "confidential source" in section 552(b)(7)(D) is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circum-

---

**8.** The government actually claims that other documents are exempt under (b)(7), as well as under (b)(1). Since we have decided that these other documents were properly withheld under (b)(1), there is no need to determine whether the (b)(7) exemption also applies.

**9.** This index was attached to the affidavit of special agent G.R. Schweickhardt. The affidavit was signed on September 7, 1977.

stances from which such an assurance could be reasonably inferred. Under this category, in every case where the investigatory records sought were compiled for law enforcement purposes—either civil or criminal in nature—the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source who furnished the information ... The term "intelligence" in section 552(b)(7)(D) is intended to apply to positive intelligence-gathering activities, counter-intelligence activities, and background security investigations by governmental units which have authority to conduct such functions.

S.Rep.No.93–1200, 93d Cong., 2d Sess. (1974) (Conf.Comm. Report), U.S.Code Cong. & Admin.News 1974, 6291, *reprinted in* Source Book at 230.

■■■ Finally, Stein argues that there was no lawful intelligence investigation involved in this case, and that therefore, the government cannot avail itself of the (b)(7) exemption in order to withhold the documents at issue. In connection with this argument, Stein claims the government agents violated the law, and his constitutional rights, when they turned over to Polish intelligence authorities information concerning Stein.

Appellant's displeasure at the activities of the government in this case is understandable. However, we have only appellant's assertions that there was no lawful investigation conducted in this case. On the record before us, we cannot determine that the intelligence investigation involved in this case was unlawful.[10]

In summary, without condoning the actions of the FBI in this case, we conclude that the government may continue to with-

hold those portions of documents "(2)(a)15," "(2)(a)16," and "(2)(b)1" withheld pursuant to exemption (b)(7). This conclusion is based on our review of these documents *in camera*, which confirms the government's assertion that disclosure of portions of the documents would constitute an unwarranted invasion of privacy and would reveal the identity of a confidential source.

## IV. ATTORNEY'S FEES

The Freedom of Information Act provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Thus, a condition precedent to an award of attorney's fees under FOIA is a finding that a plaintiff has "substantially prevailed."

In its September 11, 1979 order denying Stein's request for attorney's fees, the district court found that Stein had not "substantially prevailed" because the documents released to Stein up to that time were released as a result of Stein's administrative appeals and not because of this lawsuit. This finding was based on the following facts: on January 12, 1977, Stein filed an administrative appeal of the agency's decision to withhold documents; the administrative appeal was pending during the time of Stein's lawsuit; on May 17, 1977, the FBI released to Stein eleven additional documents; on June 20, 1977, the government submitted an affidavit to the court indicating that there was a substantial backlog of administrative appeals, that they were being processed in chronological order, and that it was likely that Stein's appeal would

---

**10.** The FBI currently has authority to conduct domestic counterintelligence investigations: Executive Order 12,036, 3 C.F.R. 112, 125, Sec. 1 ·14 (1979). The Executive Order defines "counterintelligence" as "information gathered and activities conducted to protect against espionage and other clandestine intelligence activities ... conducted for or on behalf of foreign powers, organizations or persons...." Executive Order 12,036, 3 C.F.R. 133, Sec. 4– 202 (1979). *See also* 28 U.S.C. § 533(3) (1976)

(authorizing the Attorney General to appoint persons "to conduct other investigations regarding official matters under the control of the Department of Justice and the Department of State"); 28 C.F.R. § O.85(d) (1980) (directing the FBI "to take charge of the investigative work in matters relating to espionage, sabotage, subversive activities, and related matters"); *Jabara v. Kelly,* 476 F.Supp. 561, 582 (E.D.Mich.1979).

be resolved in early August, 1977; on August 2, 1977, the FBI released eleven additional documents to Stein. The court concluded that:

> This chronology indicates that the documents the FBI released on May 17, 1977 and August 2, 1977 were not produced as a result of [Stein's] action in federal court . . . We therefore have no reason to believe that the plaintiff's administrative appeal was expedited, or that he received any additional documents in his appeal because of his instant action.

*Stein v. Dep't of Justice*, No. 77–C–954 (N.D.Ill., September 11, 1979).

 Appellant correctly notes that a judgment in his favor is not an absolute prerequisite to an award of attorney's fees. *See, e. g., Vermont Low Income Advocacy Council v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976). But the district court's conclusion that appellant in this case had not substantially prevailed at the time of the September 11, 1979 order is amply supported by the court's factual determinations, and we see no basis for reaching a contrary result.[11]

Stein made another request for attorney's fees after the district court ordered the government to disclose most of the withheld documents. In its order of September 4, 1980, the court denied Stein's request. The government contends that because Stein failed to file a notice of appeal of this order, he is precluded from challenging it on this appeal. Appellant concedes that he did not file a notice of appeal of the September 4, 1980 order, but argues that he has requested this court for an award of attorney's fees and therefore he may properly argue his entitlement to such fees.

 The simple answer to the arguments raised by the parties is that appellant is not entitled to an award of attorney's fees in any event. It is clear from our opinion on the merits of this case that Stein did not substantially prevail on this appeal. Moreover, assuming that Stein did substantially prevail, within the meaning of § 552(a)(4)(E), when the district court issued its March 24, 1980 order, we find no basis for concluding that the district court abused its discretion in denying Stein's request for attorney's fees. Fulfillment of the condition precedent (*i. e.* substantially prevailing) alone does not entitle a litigant to an award of attorney's fees; at a minimum, a court should also consider:

> (1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law.

*Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C.Cir.1977) (footnote omitted). *Accord, LaSalle Extension University v. F.T.C.*, 627 F.2d 481, 483 (D.C.Cir.1980); *Fenster v. Brown*, 617 F.2d 740, 742 (D.C.Cir.1979); S.Rep.No.93–854, 93d Cong., 2d Sess. (1974), *reprinted in* Source Book at 153, 171; S.Rep.No.93–1200, 93d Cong., 2d Sess. (1974) (Conference Comm. Report), *reprinted in* Source Book at 219, 226–27.

When it amended the FOIA in 1974 to allow for awards of attorney's fees, Congress left to the discretion of the courts the decision of whether an award was appropriate. *Fenster v. Brown*, 617 F.2d at 742. The Senate report accompanying the amendment allowing for awards of attorney's fees noted that it is

> crucial to effectuating the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates. Too often the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law.

S.Rep.No.854, 93d Cong., 2d Sess. (1974), *reprinted in* Source Book at 169. The dis-

---

11. The district court also noted that the records released to Stein as of September 11, 1979, were so fragmented as to be useless or incom-

prehensible, and that under such circumstances, Stein did not "substantially prevail."

trict court considered two factors in deciding that Stein was not entitled to an award: most of the time expended by appellant and his attorney related to proceedings in which Stein did not prevail and, as a lawyer, Stein was not the sort of average person who Congress contemplated would face insurmountable barriers to conducting litigation under FOIA.[12] In addition, the court noted that Stein intended to use the information sought in the FOIA action in another lawsuit in which he was seeking damages and, therefore, there was an element of personal gain involved in the FOIA lawsuit.

Consideration of such factors in declining to award attorney's fees in this case was within the discretion of the district court. Moreover, we find that despite the troublesome aspects of this case described earlier in this opinion, the government had a reasonable basis in law for the claimed exemptions. This reasonable basis is evidenced by the district court's early rulings upholding the government's claims of exemptions, as well as by this court's opinion on the merits of this case. *See Cuneo v. Rumsfeld,* 553 F.2d at 1366.

The judgment of the district court requiring disclosure of the remaining undisclosed documents is REVERSED; the judgment allowing continued disclosure of certified documents and the orders denying requests for attorney's fees are AFFIRMED. Each party to bear its own costs.

12. We do not understand that in giving consideration to the fact that Stein is a lawyer, the district court meant to imply that lawyers who are plaintiffs in FOIA actions may never recover attorney's fees.